May it please the court, Assistant Federal Public Defender Sean Halbert on behalf of Mr. Beasley. With me at council table is Laura Vennard, a research and writing attorney who assisted on the briefing. A jury that is 20%, 30%, even 50% certain that a defendant was justified in possessing a firearm is required to convict the defendant nonetheless under the formulation of the defense propounded by the government and adopted by the district court in Mr. Beasley's trial. What this means is that a jury could find that it is as likely as not that possession was justified. In other words, that a defendant took a socially responsible, non-culpable action. And still being as likely as not innocent, the jury would be required to convict the defendant because the defendant can only, under the government's formulation, meet the issue if he proves by a preponderance of the evidence that he meets the elements of the defense. Your Honors, Mr. Beasley argued that he seized, and it turned out to be an unloaded gun, away from a person who was causing danger to other people and to himself, and that he did so for good reasons. Under our formulation, the government should have had to prove that he was, that his culpable to have convicted him of possessing a firearm where the temporary possession was for good reason. The standard urged by the government is not present in self-defense formulations in any other context. And I think that this is a very important point that was not adequately addressed in the government's brief. In other words, if there is a fight and a person takes any other kind of a weapon, a person takes a baseball bat or takes their fist and actually assaults somebody, the government has the burden of proving beyond a reasonable doubt that that defendant did not act, that the defendant didn't act in self-defense. In other words, that is an element of the crime? Pardon me? Is that an element of the crime? An element of the, well, assault is a general intent crime, so all the defendant has to have been proved guilty of is that he intended to strike another person. And so it is actually, it's not an element of the crime that he intended to cause harm. In other words, self-defense doesn't go to the issue of whether the defendant actually did or did not intend to strike a blow with a hand or a baseball bat or anything else. It goes to the issue of why did the person do that? What were their motives in doing that? And so what happens under the government's formulation is that if we take the exact same example of a street fight and in the course of that fight someone causes even fatal injury to another person, the government is required to prove beyond a reasonable doubt that the defendant was not acting in self-defense, assuming, and this is the important, an important part, assuming the defendant meets his burden of production. In other words, that the defendant introduces enough evidence such that it becomes an issue for the jury. And the reason I emphasize the burden of production is that I believe that the government creates a specter of the floodgates opening if this court were to rule that a defendant, that the government would have to prove the absence of justification or self-defense beyond a reasonable doubt. Now, the suggestion is made that our Dominguez-Mestiz case, which held the defendant has the burden of proving duress, is analogous to what we have here. What's your response to that? In other words, why shouldn't we simply use the model of Dominguez-Mestiz to extend the same rule to justification? I think that the answer to that question is that the defense that Mr. Beasley raised is exactly analogous to defense of self or others and is actually much less similar to the defense of duress. In Dominguez-Mestiz, you had a person engaged in importation of drugs into the United States, and there was a long, convoluted story about all of the events that had happened in Mexico that created an internal pressure to go through this long, drawn-out plan. That is duress. Here, it was the — whether it's called justification or something else, it was self-defense or defense of others. In other words, Mr. Beasley grabbed the gun in a crisis situation, a split-second decision, in order to protect himself and others. Thus, it is exactly on all fours with defense of self and others and only somewhat similar to the duress. The other issue, and related to that, is in Dominguez-Mestiz, the Court was concerned about the government's inability to possibly ever prove the absence of duress when you — when — and the Court focused on the fact that these are foreign witnesses. Here, this was a street fight in San Francisco that lasted less than a minute, to which there were numerous witnesses. The government had every — there's absolutely no reason, when you're dealing with a routine felon-in-possession case, why, when the defense has met its burden of production, has introduced credible testimony that the gun was seized for defense of self and others, there's absolutely no reason why that creates an insurmountable burden on the government to actually refute the defense. And, in fact, in this case, there were numerous government witnesses. The government had the opportunity to cross-examine the defendant and the other witnesses that were brought to court, and there just is no — there's no reason why this would create an insurmountable burden. Furthermore, there will be no opening of the floodgates, because it's actually extremely rare, as any trial attorney practicing in the Federal district courts knows, it's extremely rare to be able to raise this kind of a defense. In my office, I've been there for four years, and I believe that this case and only one other case brought out of our office in that time were able to raise the justification defense of self for others. And the reason for that is the vast majority of guns are not — are found in cars or found in homes. They're not — they're not grabbed away from somebody in a — in a highly pressured situation. And I think that that's all — almost every case that's reported on the defense, whether it's called defense of self or others or justification, involves that kind of unusual circumstance. Well, now, the analogy to assault is a — is a little short, because if I understand it correctly, it would not be enough for the state to simply prove some harmful or offensive touching and rest and say, now we have a prima facie case. For example, every physician who performs surgery wouldn't suffer a prima facie case of assault simply by the government proving that he cut up somebody pretty thoroughly. We would expect them to go on and prove that it was unprivileged. Not every boxer would have a prima facie case of assault against him. We would expect that it was — there would be proof of the lack of privilege, right? I think, actually, the issue is — And when you come to self-defense, once that becomes a factor, that would be a privilege that the government has to disprove. Now, in this case, the government could prove this man is a convicted felon, he possessed a firearm, and it could rest. It wouldn't have to go into any other phase of the circumstance. It has a prima facie case once it does that. Now, it's up to somebody else to tell the jury or the trier of fact that this thing might be some exception to it or some privilege, and we have now some necessity or whatever defense you want to interpose. Self-defense certainly doesn't work in the circumstances of this case. I appreciate that. Now, the same is true when we come to duress. The duress is a defense in the face of what would otherwise be a complete case. Go ahead. I think that the distinction is that an element of assault is that the touching or the battery is not consented to. So I think framing it in terms of privilege shifts it more towards an affirmative defense, but I don't think that the element of an assault is that there was no consent. In other words, if you strike another person or you cut another person in a surgery, as long as there was consent, it is not an assault and battery. Right. Here, one of the elements that of the defense is that the gun was seized in defense of self or others. That is exactly analogous to the self-defense instruction when you're dealing with assault. But you didn't call it self-defense. It was never suggested that this was a, quote, self-defense defense to being a felon in possession. Your Honor, actually, the first element of the defense says that the gun was seized in defense of self or others, that it was called justification. That's what it's called in the Ninth Circuit model instructions, but that is the word justification is only used that the defendant was justified in taking possession, but the requisite element that needs to be met is that it was seized in defense of self or others. That's the first element of the defense. Very well. Your Honors, I would also, on the issue of whether a defendant is entitled to a reasonable amount of time to dispose of the firearm, the defense position, and this is consistent with this Court's holding, United States v. Gomez, is consistent with many other out-of-circuit cases as well, United States v. Mason, the D.C. Circuit, United  The reason that the defense position is consistent with the outcome in the Sixth Circuit is that the focus as to whether there was no reasonable legal alternative is intended to focus on when the defendant seizes possession of the firearm. The district court in this case acknowledged that the possession that took place after the police said to stop was for a few seconds and a few feet. As the Court knows, the government and the defense introduced very different versions of the facts. But, of course, for this Court's analysis, it has to assume under United States v. Lemon the defense version of the facts because that's the only way to actually decide whether the instructions were true. But as I understand it, you were asking for an instruction that allowed a certain period of time or a reasonable time or some definition that would have established that? That's right. We asked for a corollary to the requirement that there be no reasonable alternative to seizing the gun, that there be a corollary that the defendant have a reasonable amount of time to safely dispose of the firearm. But there's no authority for that, at least not in our circuit, is there? No. Well, the Singleton case, actually, the district court's position at trial was different from the position the government takes in its briefs. The district court believed that Singleton did correctly state the law. In other words, that there is this corollary that allows a reasonable amount of time. Also, United States v. Gomez is directly on point. In United States v. Gomez, this Court remanded to the district court with an instruction that the defendant had to be allowed to present a justification defense. And in that case, the facts were exactly analogous. The defendant, when he saw the two custom service agents trying to serve a subpoena, fled with the gun into the house and disposed of the gun in the house. The government made the argument that this meant that there was no reasonable legal alternative, or the defendant had a reasonable legal alternative, and the court rejected that argument and said that the foe and focused on the time period, the two-day time period in which the defendant had taken possession of the gun. The court did not find that the defendant was precluded from having this defense simply because for 2 or 3 or 5, 10 seconds, he ran into the house with the gun. The inquiry was why did he take possession of the gun and did he dispose of it reasonably within a reasonable period of time. Your Honors, there's something I addressed in the briefing that I won't address here unless the Court has questions, which is the government did argue that the defense did not request those instructions and that the defense acquiesced in the instructions given by the court. I would, we addressed this in our brief, but I, and I will, I won't deal with that further unless the Court wishes me to. The last point I would make about that. To what extent is it significant that Singleton held that the defendant there was not entitled to a justification defense? I don't, I think it's every case, this is a highly intense factual inquiry. So in, I think that this is more analogous, in Singleton the possession went on for too long. This case is very similar to Newcomb, which is a Sixth Circuit case, which is consistent with the United States v. Gomez case in this circuit. In that case, the defendant took possession of a gun and then for the, for the, it was described as the moments until the police arrived, he maintained possession of the gun. And the Court there said, we are not going to have such a highly technical reading of the statute so as to require, such that a few moments, the, the continued retention for just a few moments until the police arrived converted into an illegal possession. And the Newcomb Court specifically said this was a crisis situation. If, as long as the defendant behaved reasonably, it doesn't matter that at the end of the possession there may have been a reasonable alternative for those final moments. The Court, and that's what the Court found in Newcomb. With respect to the, the expert testimony, there are two points I wanted to emphasize for the Court. The first is that the, the expert who testified was really an expert in name only. He had been an ATF agent for a relatively short period of time, three years. Had no experience that he spoke of, of, of looking at foreign firearms. And ultimately, ultimately reached his conclusion in a way that any of us could have reached the conclusion if we had been so inclined. Which was that he looked at manuals and compared it to the gun at issue and said, there are similarities between markings on the gun and the manuals. When it didn't match up, in other words, when there was no manual for which there were identical markings described in the manual and described in the gun, he called somebody who was not, never disclosed to the defense. It was never revealed until actual cross-examination on the stand that he had even made this phone call. And it was then that he indicated that in speaking to this unknown person without providing a, a picture of the gun, photographs of the gun, or even the actual gun to this, to this other expert, it was then that he said that you could determine that this undisclosed person had said that the gun was manufactured in Czechoslovakia. Under this Court's decision in Hermnek, this, the methodology that this expert used was no expert methodology at all. He, he was, he is a government proponent. He works for the United States government. He began his investigation after the case was initiated, and he came to a conclusion that was self-serving and ultimately inconsistent with his own reference materials. The defense was not aware until he took the stand that he was relying on hearsay at that point the defense had absolutely no opportunity to actually, to, to confront the person on whom he was relying for his expert opinion. And I believe that this Court has made it very clear that an expert is not supposed to, while an expert can rely on otherwise inadmissible material, an expert cannot take the stand and say this gun was manufactured somewhere else and I know that it's so because someone else told me so. The two, the two violations there, the first is the, the government's failure to disclose this conversation or, or anything about it to the defense prior to the cross-examination, and the second is there was simply insufficient evidence. In particular, because this gun resembled a gun that was used by the Nazis in World War II, the reference material specifically said beware of counterfeit markings. In other words, if this were just a Smith & Wesson or some other, some other gun that's very common, you wouldn't think that there would be a danger that there would be counterfeit guns that were similar. However, the reference material specifically said that, that, that anyone examining this gun had to beware of counterfeit markings. And yet when the expert looked at the gun, he simply discounted variations by saying I've, I have found variations, which again is, is circular reasoning. Finally, Your Honor. Well, doesn't that really go to the weight of the evidence rather than expertise? I, I believe it does go to the weight of, well, there, there are two issues. The first is that I don't believe he had a reliable methodology. And in Hermanek, the, the court said just because this agent is used to interpreting conversations of, of drug dealers and, and criminals over the phone doesn't mean that he knows what this other term means. And, and similarly here, this ATF agent has been trained in looking at markings on firearms, but he's never been trained in examining foreign firearms. But, but you indicated that it wasn't disclosed who he talked to. Well, I, I thought in cross-examination it came out that he called CZ USA the current importer for the, the, the firearm company. When I say it wasn't disclosed. And that was, that was in the record. That's correct. When I say it wasn't disclosed, it wasn't. There is under the, the Federal rules, the government is required to disclose the bases for the expert's opinion prior to trial. In this case, the judge ordered that the government do so. In response, the government produced the reference materials. It wasn't disclosed until cross-examination that he had relied on hearsay. At that point, we did know who he had contacted, but we didn't have a name. We didn't, he wasn't provided with any picture of the gun or photograph of the gun. So to that extent, it is a weight of the evidence argument with respect to sufficiency of the evidence under our Rule 29 motion. And, Your Honors, if I would, I'll reserve two minutes for my rebuttal. But the final point I wanted to make with respect to the Commerce Clause is that I'm aware of no case in this circuit or anywhere else that deals with a gun that never actually moved in commerce. Even under the government's theory, this gun was, at best, given to, taken by a serviceman as a memento of his, of his service by a serviceman of his memento. Excuse me. Isn't foreign origin enough? No, it's not. All of the cases say, that deal with time, say that as long as it moved in commerce at some point. Normally, when a gun is manufactured in one place and sent to another, it is sent within the channels of commerce. In other words, it shipped as part of a commercial shipment. Here, the gun was taken just as much as a stone from a graveyard might have been. It was a memento. It never moved in commerce. It was never purchased by anybody, and it was never, when it was brought into the United States, it was not brought in as part of the chain of commerce. Thank you. Thank you, counsel. Mr. Stesko. Thank you, Your Honor. May it please the Court. My name is Chris Stesko, and I represent the United States. I'd like to begin by addressing the burden of proof issue. In Dominguez-Mestez, this Court held that it was proper to require a defendant to prove the affirmative defense of duress where that defense did not negate an element of the charge of crime, but rather merely justified or excused criminal conduct. The analysis of this Court in that case applies here. It was proper for the district court to require the defendant to bear the burden of proving that his conduct was justified when he possessed a firearm because that defense does not negate an element of the charge of crime. The crime here, being a felon in possession of a firearm, is a knowledge-based crime. That means that the defendant violates the statute whenever he knowingly possesses a firearm. His motives for possessing the firearm, the how and the why of his possession, do not negate an element of the charge of crime. And in that way, this case is directly analogous to Dominguez-Mestez. And in fact, the Third and the Eleventh Circuit have both expressly addressed who should bear the burden of proof on a justification case in this kind of for a felon in possession charge. Both have held that the defendant should bear that burden. And the Eleventh Circuit in Delaware expressly relied upon this Court's reasoning in Dominguez-Mestez in reaching that conclusion. Now, the defendant's arguments attempting to distinguish Dominguez-Mestez are not persuasive. The defendant says Dominguez-Mestez was a duress case. His defense was really more like self-defense. That's not true. First, his defense was duress, was really more like duress. In United States v. Gomez, this Court held that duress and justification defenses are closely related. And in fact, if you look at the elements of duress, they are, first, that there was an immediate threat of death or serious bodily injury to the defendant or another person. Second, a well-grounded fear that the threat will be carried out. And third, a lack of reasonable opportunity to escape the threat and harm. Those elements are just like the elements of a justification defense. And it doesn't answer the question to say that because the defense is based upon a threat to another person or a threat to a defendant, therefore self-defense, because that's true of duress also. Second, self-defense is a defense that applies where physical harm is caused to another person. And at common law, that was the distinction. Self-defense applies where a person claims a defense to committing a harm against another. Duress, in contrast, never could justify something such as murder. It was never a justification for committing harm against another person. It was always a justification for committing another type of crime. But I think more importantly, that regardless of the label you place on the defense, duress or self-defense, this Court has to or should follow its reasoning in Dominguez-Mestiz. In other words, it shouldn't be a formalistic exercise of is this duress, is this self-defense. But if it were, this is clearly more like duress. Rather, the exercise should be to apply the analysis that this Court has already established in Dominguez-Mestiz for allocating the burden of proof. And if the Court applies that analysis, then the burden of proof should rest on the The defendant also attempts to distinguish Dominguez-Mestiz because it claims that Dominguez-Mestiz involved more difficult elements of proof for the defendant. And that's not true. But before I jump into that, I want to explain exactly what Dominguez-Mestiz said. What Dominguez-Mestiz said was that a court can take into consideration what it called practical considerations when allocating the burden of proof on a defense. And what it said was that those practical considerations were relevant to how the Court would formulate its Federal procedural rules. And the Court went on to say that it's not practical to require the government to prove a negative, the absence of duress, beyond a reasonable doubt. And to quote, the Court said, To require the government to prove beyond a reasonable doubt the absence of duress would create a standard that would be nearly impossible to satisfy. In many cases, the sole evidence of duress is the testimony offered by the defendant. Now, the defendant argues that that language is limited to what he characterizes as border cases. But if you read Dominguez-Mestiz, I think you'll see that the Court's reasoning wasn't limited to so-called border cases, but rather applied to all duress cases. And, in fact, in a subsequent case called Fye-Linn, this Court read Dominguez-Mestiz broadly. And I quote, the Court said, We used quite broad language in Dominguez-Mestiz to point out the difficulties inherent in requiring the government to prove a negative. And in that case, this Court rejected the idea that the duress defense should shift from case to case depending on the circumstances of the case or the elements of the charged crime, where the defense did not negate an element of the crime, but rather the burden should always remain with the defendant. Counsel, we do have a Seventh Circuit case. I guess it's Talbot, which goes the other way and makes the point that it would be more prudent in reassigning the burden, which technically could be done constitutionally, it would be more prudent to look for some sort of affirmative legislative signal, some legislative provision to that effect. What's your response? Why shouldn't we follow the Seventh Circuit? The Court should not follow the Seventh Circuit because that case was not correctly decided. I note that the defendant didn't rely upon it at all in its opening argument. I think it's a hard case to rely upon. Because when you read the case, what the Seventh Circuit said was that absent a congressional statute expressly requiring the defendant to bear the burden of proof on a defense, then that defense must lie with the government. That's what that Court said. However, there's no authority for that proposition. And, in fact, it's directly contrary to this Court's holding in Dominguez-Mestiz. This Court recognized duress as a matter of Federal common law and said that the defendant should bear the burden of proof on the defense as a matter of Federal procedural rules. There was no congressional statute at issue there recognizing that defense. There's no congressional statute allocating the burden of proof. Yet this Court recognizes authority as a matter of Federal common law to formulate the defense and allocate the burden of proof. Talbot says this Court shouldn't have done that. Talbot stands for the proposition that this Court violated some separation of powers principle by doing that. Well, the law in this Circuit is that the Court can do that. Second, the rule announced in Talbot wasn't based upon any authority that that Court cited. As the Third and the Eleventh Circuit point out in distinguishing that case, all the cases cited by Talbot don't stand for that proposition. Rather, they're just cases where Congress did enact a statute. I mean, clearly Congress can do that, but it doesn't mean that it has to do that in order to – for the government to – for the defendant to be – for the defendant to be required to bear the burden of proof. So – and in addition, I think Talbot's also contrary to controlling Supreme Court authority. The Supreme Court has recognized that Federal courts have the power to recognize common law defenses to statutory crimes. The Supreme Court has said that at common law, the burden of proof always was with the defendant. So the default rule at common law is that the defendant bears the burden, not as the Seventh Circuit would have it, that the government always bears the burden, absent some congressional enactment. So in short, Talbot's wrongly decided it wasn't based upon any established legal principle. It's contrary to this Court's holding in Dominguez-Mestez, and it's been rejected by the Third and the Eleventh Circuit for those reasons. I do want to address what this Court in Dominguez-Meztez called the practical considerations for allocating the burden of proof as they apply to this case. Both the Third and the Eleventh Circuit held that the same practical considerations that were at issue in Dominguez-Meztez also favored requiring the defendant to bear the burden of proof in this issue. And that's because the defendant is in the best position to prove his justification defense. The defense is based upon facts and circumstances that are distinct from and different than the charged crime. As Justice Scanlon pointed out, the government can prove its case and, in fact, did prove its case by just showing that the defendant knowingly possessed the firearm when he was arrested. The defense necessarily relies upon events that occurred prior to the arrest that are known mainly and sometimes exclusively by the defendant. And those events are necessarily also antecedent to the arrest. So as the Eleventh Circuit held, requiring the government to disprove justification beyond a reasonable doubt would place an unrealistic burden on the government. I think that's particularly true when you take into consideration the procedural rules that apply when a defendant raises a defense like this. And that's true in this case, too. When you think about how the defense was raised. First, the defendant never disclosed the defense until the end of the government's case. The defendant delayed making a proffer of the defense until the government closed. The defendant delayed making an opening statement until the government closed. So the government never learned the details of the defense, what the defendant was going to claim he did and why he did it, until it closed his case in chief. So if the burden were on the government to disprove that defense beyond a reasonable doubt, the government would have to essentially rebut the defense beyond a reasonable doubt without having the benefit of performing an investigation. That's also true because the rules of discovery don't apply in the same way to the defendant that they apply to the government. So this is a case where the defense is always known to the defendant, almost, and sometimes exclusively known to the defendant, and it would be very difficult for the government to rebut beyond a reasonable doubt. The defendant also suggested that Dominguez-Mestiz has a fact situation that's not analogous to the justification context. Read this Court's decision in Gomez, and I think you'll come to the conclusion that that's not true. In Gomez, the fact situation was very similar to Dominguez-Mestiz. It was a series of threats over a long period of time, and the defendant claimed he took possession of the firearm because of those threats. He said he went to the police over and over and over again, but the police never helped him. And in Gomez, this Court held that the defendant was allowed to present a defense. So in formulating the rule of practice, it's not proper just to focus on one particular factual situation, but the Court can also look at the other situations in which the defense is presented, and the facts of Gomez provide a good example of how the defense can also arise in a situation that looks more like the Dominguez-Mestiz case. Elsa, do you want to say anything about the instructions issue? Yes, Your Honor. First, I think it's important to understand factually what occurred with the instructions issue, because I don't agree that the defense requested the instruction that they're requesting now. What occurred after, while the jury was deliberating, is that the jury passed out a note, and the note said, does the third justification element, no reasonable legal alternative, refer to taking possession of the gun or maintaining possession of the gun after the police ordered him to stop? The district court answered the question, the third element refers to the entire period of possession. The defendant said, that instruction's fine, but I want you to add something else, what the defendant now calls a corollary. And what the defendant asked the Court to add was that the defendant has to get rid of the gun as soon as a safe opportunity arises. The district court rejected that proposed additional supplemental instruction for two reasons, neither of which were in view of discretion. First, the district court said that the instruction, the additional instruction requested by the defendant, was not responsive to the jury's question. And that's true. The jury was only asking about the third element, the no reasonable legal alternative element. Second, the district court said, or found, that the defendant's theory of the case was adequately covered and litigated within the context of the existing instructions. The existing instruction was that the defendant has to have no reasonable legal alternative possessing the gun. Within the context of that instruction, the defendant argued that he had no reasonable legal alternative when he saw the police on the street corner because he was afraid of the police, and that's why he ran, and therefore his conduct was reasonable. And you can find that argument at page 596 of the record. The government argued in response, that's nonsense. The police said stop. The defendant should have put up his hands and stopped. So the parties argued extensively about the concept of reasonableness and whether or not it was safe for him to give the gun to the police when the police arrived. So the argument that the defendant wanted to make through the supplemental jury instruction was already made to the jury in closing arguments in the context of the existing instruction. Now, on appeal, the instruction the defendant says he requested was that he have a reasonable amount of time to safely dispose of the firearm. First, that's not what was requested, but it's also not the law. The law is that the defendant has to get rid of the gun as soon as he can. And the defendant's reliance on Singleton actually points that out. In Singleton, the Court didn't give a justification defense because Singleton failed to show that he did not maintain possession any longer than absolutely necessary. And then the Court went on to say, corollary to the requirement that the defendant have no alternative to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises. So that's what that passage says, is that as soon as the threat is over, as soon as the defendant is safe from the alleged threat that caused him to take the gun, he has to get rid of the gun as soon as he can. And the other cases cited by the defendant relating to this proposition contain similar language. Mason, for example, requires the defendant to demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct. All the cases say that the defendant has to get rid of the gun as soon as he can. And, in fact, in closing argument, defense counsel began the argument by saying he took the gun and he got rid of it as soon as he can. So there was really no confusion that that was a requirement of what the law required. With respect to the expert testimony, much of the argument either misstates the law or misstates the record in this case. The law is, as this Court stated in the United States v. Clauston, that an ATF agent can testify as to the origin of a firearm based upon the agent's examination of the firearm and his comparison of that firearm with depictions and reference books and manuals. In United States v. Gann, this Court held that an ATF agent can testify regarding the origin of a firearm based upon his analysis of the firearm and certain characteristic markings on the firearm. And in United States v. Alvarez, this Court held that markings on a firearm are admissible to prove the origin of the firearm by themselves. And in that case, the markings were Guernica Spain. Now, Agent Cleary testified that he based his opinion on his examination of the markings on the firearm, his comparison of the firearm to the various reference manuals, many of which contain an exact match between the firearm at issue and the depiction of the firearm in the reference manuals.  Now, in context, that makes complete sense. The defense had moved to exclude his testimony unless he relied upon documents provided by the manufacturer. And you'll see that at page 8 of the record. So what he did was contact the manufacturer to obtain the records. Now, the defense would like to say that his opinion testimony was based only upon the reference manuals. He based it on that contact with the representative at CZ. That's just not true. He based it upon those upon his examination of the firearm and his comparison of the firearm to reference manuals. That's what it was based upon. Counsel, what about this Halbert's argument that there is no proof of commerce in this situation? She disagrees that foreign origin would be enough. Yeah. And, Your Honor, that argument is directly contrary to this Court's decision in the United States v. Elvarez. And that's at 972 F. Second 1000. And I quote from page 1003, quote, Is this a newly cited case? No, Your Honor. It's in the brief. Yes, Your Honor. Evidence of the gun's foreign manufacturer is sufficient to support a finding that the gun moved to interstate commerce, period. That's what this Court held. And in that case, the evidence of the foreign manufacturer were the markings on the gun, Garnica, Spain. That was enough to support a finding that it moved in interstate commerce. So that argument is contrary to the law. The recency argument that the defense also makes is also contrary to the law. And a good example of that is the United States v. Casterline, which is also cited in the papers, Your Honor. In that case, there was just the only evidence in the record was that the gun was manufactured in New York and found in Oregon. And the Court noted, so the gun could have traveled in interstate commerce at some time, although that may have been decades in the past. And the Court went on to say that that's a sufficient evidence of movement in interstate commerce because there's no recency requirement. The defendant argues in its papers that that holding was based upon a clear error analysis. I read the case three times. The words clear error do not occur in the case. I don't know where the defendant gets that. So the interstate commerce arguments made by the defense have already been decided by this Court. If there's anything else, Your Honor. I want to go back to the argument about the duration of the possession. How much of a factor was that really in the trial? Or is this business about his holding it for a period that the government would say was too long, an issue that has really been generated on appeal by the jury's question? Was it argued? It was argued to the jury, the issue of duration and whether or not he met the third element. But I think what does get lost on appeal, Your Honor, is that every element of this defense was disputed. The only issue in the case wasn't whether or not he held on to it too long because to the government, the facts showed that the defendant went to the tenderloin district, which is about three blocks away, with five other friends, brutally beat another man. And then at the end of the fight, while the other man and one of his friends was waving a gun, and while they were walking away and the police were coming, the defendant took the gun as a handoff. He saw the police. The police said, Stop, stop. He had the gun in his pocket at that time. He kept on walking away. The police officer got out of the car, told him to stop, kept on walking towards him, and as soon as the police officer approached him, the defendant bolted down the street, ran up almost a block, threw the gun underneath a parked car, attempted to throw it under a parked car. But it strikes me as if the issue is made that he disposed of it in the wrong manner rather than at the right time. I mean, as far as getting rid of it, if you will, he probably got rid of it as quickly as he could if he had handed it to the policeman. I mean, we're focused on time only. And anyway, that was fully argued to the jury about the duration and the circumstances of his parting with it. Yes, Your Honor. And if you look at the closing arguments, you'll see that the defense's main argument or one of the main arguments was what difference does it make? The police would have gotten the gun five seconds later. And actually, that's a quote, a paraphrase from that argument. I mean, the government's argument in response was he didn't try to get rid of the gun because he did some good thing. He ran because he wanted to get away, and he ditched the gun so he can get away, and he kept running after he threw the gun down. All right. Thank you, counsel. Your time has expired. Ms. Hallberg, you have some reserved time for rebuttal. Thank you. With respect to whether the defense refutes an element of the offense, I would just ask this Court to look at the cases dealing with knowledge and possession as a term of art in which there are many cases that say that a person doesn't intend to possess a firearm and a person doesn't necessarily knowingly possess a firearm when you're dealing with very temporary possession. So I think that the defense is bound up in the elements of possession. A defendant has to know the characteristics of the firearm that make it a firearm under Federal law. The defendant has to also intend to possess the firearm. So it is bound up with the elements of the offense. Regarding Dominguez-Mestiz, the Ninth Circuit has held in those border importation cases, whether it's people or drugs, that duress has to be proved by the defense by a preponderance of evidence. This is at odds with other circuits, which have held, I think it's the first, the second, the sixth, have held it's fine to have the government prove the absence of duress beyond a reasonable doubt. This Court does not have to apply the duress law in Dominguez-Mestiz to the context of justification in a felon in possession case. There is no controlling Ninth Circuit law. Hearst, we believe Hearst was not dictum, but even so, Dominguez-Mestiz is not controlling. It is up to this Court to decide whether, what the correct burden should be. The government argues that there was an element of surprise in the justification defense. I just wanted to mention to the Court that for months before the trial, the government litigated that we should not be allowed to present a justification defense. In these cases, it's never a surprise. And, Your Honors, just very briefly, two more points. The difference, the main difference with the duration issue is whether the defendant behaved reasonably. We argued that he was reasonable in running across the street and throwing away the gun. The government argued it was unreasonable. But under the way the jury was instructed, it didn't matter whether he behaved reasonably. All that mattered was whether he had a reasonable legal alternative. And so even if what he did was reasonable, if there was some other alternative, the jury was required to convict him. And that was our essential bone of contention. And the final point I wanted to make. Very briefly, Counsel. Very briefly. I would ask if the government said that the reference materials indicated there would be variations with the markings on the gun. That's incorrect. It was the expert, not the reference materials. And with regard to recency, I would just refer to the Court, this Court, to cases involving other statutes. Thank you, Counsel. Thank you. Your time has expired. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Leavy